IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| RENTBERRY INC., a Delaware corporation, and Delaney Wysingle, an individual,<br><br>                Plaintiffs,<br><br>        v.<br><br>THE CITY OF SEATTLE, a Washington municipal corporation,<br><br>                Defendant. | Civil Action No.<br><br>_____<br><br>**CIVIL RIGHTS COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Plaintiffs, Rentberry, Inc., and Delaney Wysingle, by and through undersigned counsel, hereby file this Complaint against Defendant City of Seattle (hereinafter "the City") and allege as follows:

## INTRODUCTION

1. This civil rights action seeks to vindicate Plaintiffs' rights of freedom of speech protected by the First Amendment to the United States Constitution. The City is violating those rights by enforcing a ban on rental bidding websites that facilitate communication between landlords and renters in the City of Seattle.

## JURISDICTION AND VENUE

2. This case is brought pursuant to 42 U.S.C. §§ 1983 and 1988 and 28 U.S.C. §§ 2201 and 2202.

3. This Court has subject matter jurisdiction based on 28 U.S.C. §§ 1331 and 1343(a)(3) and (4).

4. Venue in this Court is appropriate pursuant to 28 U.S.C § 1391(b).

## PARTIES

5. Plaintiff Rentberry, Inc., is a start-up founded in late 2015 as an online platform to assist users—both landlords and renters—to find and manage rental housing. Rentberry's purpose is to reduce costs, delay, and uncertainty in the rental process. Rentberry operates a website that facilitates communications between landlords and tenants in 4,948 cities.

6. Rentberry's innovative online communication platform allows renters and landlords, including landlords like Plaintiff Delaney Wysingle, to communicate about rental properties and maintain lasting landlord–tenant relationships.

7. A key feature of the Rentberry platform is its online bidding technology, which increases transparency and efficiency and allows landlords and tenants to adjust to changes in housing markets by bidding on the rental rate for a housing unit.

8. Rentberry facilitates communications between landlords and renters regarding lease terms, including rent, deposits, and lease duration, through its online bidding process.

9. Rentberry's bidding platform is designed to facilitate communication of price information in real time, to ensure that landlords price their properties optimally in both hot and slow markets, while potential tenants enjoy complete visibility on competing offers and the ability to seamlessly negotiate rental terms online.

10. As well as lease terms, including rent, deposits, and lease duration, Rentberry also facilitates communication on a wide variety of topics related to housing between landlords and renters regarding maintenance requests, housing references, search engine functions, and reviews. Many of these communications do not propose a commercial transaction.

11. All of the communications Rentberry facilitates are inextricably intertwined with the complex, personal, and long-lasting relationships between landlord and tenant that are initiated by the bidding process.

12. The bidding feature is an integral component of Rentberry's website.

13. Rentberry collects a fee at different stages in the rental process: Tenants pay $9.99 per application (this includes credit report/score, criminal/background check); Landlords pay $19.99 for document execution and rent collection functionality; Landlords pay $24.99 to utilize the platform if they have more than 3 properties on the platform; Brokers pay $24.99 to utilize the platform.

14. Rentberry is incorporated in Delaware (EIN: 47-4933743) and operates from an office in San Francisco, California.

15. Plaintiff Delaney Wysingle is a landlord who owns and manages a single-family rental home in Seattle.

16. Mr. Wysingle has owned and managed his rental property for three years and intends to continue to do so in the future.

17. Mr. Wysingle periodically needs to find new tenants for his rental property and will need to do so again in the summer of 2018.

18. Mr. Wysingle plans to communicate with prospective tenants using Rentberry and other "rental housing bidding platforms," as defined in SMC 7.24.090. Mr. Wysingle would use bidding platforms to save time, settle on a mutually beneficial arrangement with prospective tenants, and determine the best market rent through bidding. Mr. Wysingle would consider a bid below his initial asking price if the applicant seemed otherwise qualified. Mr. Wysingle would also use Rentberry's search functions for Seattle properties in order to evaluate competition and view dynamic pricing in the residential housing market.

19. Mr. Wysingle values the right to easily communicate with his tenants, and Rentberry would facilitate easier communication with both existing and prospective tenants. Mr. Wysingle cannot afford to absorb losses because of a tenancy gone bad. Mr. Wysingle

treasures his right to ensure compatibility by easily communicating with eligible applicants and tenants.

20. Defendant City of Seattle is a Washington state municipality located in King County and chartered by the State of Washington.

## FACTS

21. On March 19, 2018, the City Council voted to amend Seattle's Rental Agreement Regulation Ordinance, SMC 7.24.020 to .160, by approving Ordinance No. 125551 (hereinafter the "website ban").

22. Exhibit 1 is a true and accurate copy of the website ban.[1]

23. On March 30, 2018, Mayor Jenny Durkan approved the website ban.

24. On April 29, 2018, the website ban became effective and is codified at SMC 7.24.020 and 7.24.090.

25. The website ban establishes a one-year prohibition on the use of "Rental housing bidding platforms," like Rentberry, "that connect[] potential tenants and landlords via an application based or online platform to facilitate rental housing auctions wherein potential tenants submit competing bids on certain lease provisions including but not limited to housing costs and lease term, to landlords for approval or denial." SMC 7.24.020; SMC 7.24.090(A), (B).

26. Rentberry is a "Rental housing bidding platform" as defined by the website ban.

27. The City's staff memo regarding the website ban identified two websites as targets of the website ban: Rentberry and Biddwell.

28. Exhibit 2 is a true and accurate copy of the staff memo.[2]

29. "Landlords and potential tenants are prohibited from using rental housing bidding platforms for real property located in Seattle city limits." SMC 7.24.090(A).

---

[1] The website ban is also available online: http://seattle.legistar.com/LegislationDetail.aspx?ID=3347171&GUID=750FB212-7C08-4E0A-AA72-579F2242A561&FullText=1
[2] The staff memo is also available online: http://seattle.legistar.com/View.ashx?M=F&ID=5872575&GUID=23EFA295-6878-47E3-8B7B-D549967137F9

30. Landlords and tenants are free to discuss "competing bids on certain lease provisions including but not limited to housing costs and lease term," so long as they do not communicate via a rental housing bidding platform.

31. By banning landlords and potential tenants from using Rentberry's innovative communications platform for real property located in Seattle city limits, the website ban operates as a prior restraint on lawful expression.

32. By banning the use of rental housing bidding platforms like Rentberry, the website ban prohibits all speech communicated on the platform, including bidding.

33. Failure to comply with the Rental Agreement Regulation Ordinance, including the website ban, subjects landlords and tenants to a $500 fine for the first violation and a $1,000 fine for each subsequent violation within a five-year period. SMC 7.24.130(F)(1). Additional violations within a three-year period can result in criminal charges. SMC 7.24.150.

34. But for the City's enforcement of the website ban, Rentberry would make its site available to facilitate communications between Seattle landlords and tenants.

35. But for the City's enforcement of the website ban, Mr. Wysingle would use rental bidding platforms, including Rentberry, to communicate with potential tenants.

36. The website ban was passed to prevent landlords and tenants from communicating via rental housing bidding platforms while

> the Office of Housing coordinate[s] with the Seattle Office for Civil Rights and the Seattle Department of Construction and Inspections to determine whether rental housing bidding platforms comply with The City of Seattle's fair housing and rental regulation laws and conduct a study of the current or potential impacts rental housing bidding platforms have and could have on equitable access to Seattle's rental housing market.

SMC 7.24.090(C)(3).

37. The website ban prevents landlords and tenants from communicating via rental housing bidding platforms because "it is unclear whether the structure and operation of these new

services comply with the City's code, including new regulations such as first-in-time." Ordinance 125551 at 1, lines 18-20.

38. The first-in-time regulation referenced in the website ban does not apply if the landlord is legally obligated to or voluntarily sets aside the rental unit for "specific vulnerable populations." SMC 14.08.050(A)(4)(a), (b). Accessory dwelling units and detached accessory dwelling units are also exempted.

39. The first-in-time rule referenced in the website ban has been declared unconstitutional. *Yim v. City of Seattle*, Case No. 17-2-05595-6 (King Cnty. Super. Ct. 2018), *appeal docketed*, No. 95813-1 (Washington Supreme Court Apr. 26, 2018).

40. The City Council did not make any legislative findings and has no evidence that rental housing bidding platforms violate the City of Seattle's fair housing and rental regulation laws.

41. The City Council did not make any legislative findings and has no evidence that rental housing bidding platforms have any impact on equitable access to Seattle's rental housing market.

42. The City Council did not make any legislative findings and has no evidence that the website ban directly advances a substantial governmental interest.

43. The connection between rental housing bidding platforms and any governmental interest is "unclear," "uncertain," and "has not been studied in Seattle." Ordinance 125551 at 1, lines 18-25.

## CLAIM FOR RELIEF

### (Free Speech)

### (First and Fourteenth Amendments)

44. Plaintiffs incorporate the allegations in the preceding paragraphs.

45. The First Amendment to the United States Constitution, as applied to the States through the Fourteenth Amendment, protects the truthful, nonmisleading speech that Mr. Wysingle would engage in on rental bidding platforms, including Rentberry.

46.     The First Amendment to the United States Constitution, as applied to the States through the Fourteenth Amendment, protects the truthful, nonmisleading speech that is facilitated by Rentberry's website.

47.     On its face and as enforced by the City, the website ban prohibits Plaintiffs from engaging in lawful communication through a rental housing bidding platform.

48.     The speech ban imposed by the website ban burdens Plaintiffs' rights of free speech.

49.     The speech ban imposed by the website ban is not tailored to serve a substantial government interest.

50.     By prohibiting Plaintiffs from communicating through a rental housing bidding platform, the City currently maintains and actively enforces a set of laws, practices, policies, and procedures under color of state law that deprive Plaintiffs of their rights of free speech, in violation of the First Amendment to the United States Constitution, as applied to the States through the Fourteenth Amendment and 42 U.S.C. § 1983.

51.     Plaintiffs have no adequate remedy at law to compensate for the loss of these fundamental freedoms and will suffer irreparable injury absent an injunction restraining the City's enforcement of the website ban.

52.     Plaintiffs are therefore entitled to declaratory and permanent injunctive relief against continued enforcement and maintenance of the City's unconstitutional laws, practices, and policies. *See* 28 U.S.C. §§ 2201, 2202.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs respectfully request that this Court enter judgment in their favor as follows:

A.     Declare that SMC 7.24.090(A) violates Plaintiffs' rights to freedom of speech protected by the First and Fourteenth Amendments on its face and as applied;

///

B. Preliminarily and permanently enjoin Defendant, its officers, agents, servants, employees, and all persons in active concert or participation with them from enforcing SMC 7.24.090(A);

C. Award Plaintiffs their costs, attorneys' fees, and other expenses in accordance with law, including 42 U.S.C. § 1988; and

D. Order such additional relief as may be just and proper.

DATED: May 23, 2018.

Respectfully submitted,

s/ BRIAN T. HODGES

Brian T. Hodges, WSBA # 31976
Ethan W. Blevins, WSBA # 48219
Pacific Legal Foundation
10940 Northeast 33rd Place, Suite 210
Bellevue, Washington 98004
Telephone: (425) 576-0484
Fax: (425) 576-9565
Email: BHodges@pacificlegal.org
Email: EBlevins@pacificlegal.org

Wencong Fa, California Bar # 301679 **
Pacific Legal Foundation
930 G Street
Sacramento, California 95814
Telephone: (916) 419-7111
Fax: (916) 419-7747
Email: WFa@pacificlegal.org

James Manley, Arizona Bar # 031820 **
Pacific Legal Foundation
3217 East Shea Blvd., #108
Phoenix, Arizona 85028
Telephone: (916) 288-1405
Email: JManley@pacificlegal.org

** Pro hac vice pending

Attorneys for Plaintiffs